**LaMONICA HERBST & MANISCALCO LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
David A. Blansky, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| PRETTY GIRL, INC., | Case No: 14-11979-SHL |
| Debtor. | |

-------------------------------------------------------------------x

| | |
|---|---|
| SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF PRETTY GIRL, INC., | |
| Plaintiff, | Adv. Pro. No. 16-01145-SHL |
| - against - | |
| NEDM PAYABLES CORP., | |
| Defendant. | |

-------------------------------------------------------------------x

| | |
|---|---|
| SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF PRETTY GIRL, INC., | |
| Plaintiff, | Adv. Pro. No. 16-01146-SHL |
| - against - | |
| NEDM R.E. CORP., | |
| Defendant. | |

-------------------------------------------------------------------x

## **DECLARATION IN REPLY**

David A. Blansky, Esq. affirms, under penalty of perjury, the following:

1. I am a partner of LaMonica Herbst & Maniscalco, LLP, counsel to plaintiff Salvatore LaMonica, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the estate of Pretty Girl, Inc. (the "Debtor").

2. I submit this reply in response to the opposition interposed by Defendants NEDM R.E. Corp. and NEDM Payables Corp. (collectively, the "NEDM Defendants") to Plaintiff's Motions for Partial Summary Judgment filed on July 22, 2020 (the "Motions").

3. In the Motions, Plaintiff seeks partial summary judgment on his second, third and sixth claims for relief pursuant to Sections 273, 273(a) and 276 of the New York Debtor and Creditor Law (the "DCL") and Sections 544(b) and 550 of the Bankruptcy Code.

## THE FACTUAL RECORD

4. The NEDM Defendants' opposition is comprised of a memorandum of law (the "Defendants' Memorandum") and their Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 ("Defendants' Statement").

5. Local Bankruptcy Rule 7056(d) provides:

> Each numbered paragraph in the statement of material facts required to be served by the moving party shall be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

6. Paragraphs "1" through "6", "9" through "13", and "20" through "23" of Defendants' Statement is blank. Since Plaintiff's allegations in these paragraphs have not been controverted by the NEDM Defendants, there are deemed admitted.

7. In response to the statements of fact containing in paragraph "7", "14", "15" and "17" of Plaintiff's Statements of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 ("Plaintiff's Statements"), the NEDM Defendants admit the authenticity of the evidentiary material supporting the allegations contain in those paragraphs.

8. As to paragraph "16", the NEDM Defendants rely on Mr. Nigri's testimony as proof that they made payments for the benefit of the Debtor to its landlord and other creditors. While the

NEDM Defendants cite to Mr. Nigri's testimony on this point, the NEDM Defendants neither produced direct evidence of the payments of the Debtor's obligations to creditors during discovery or in opposition to the Motions. To the contrary, a cursory review of the ledgers produced by them, annexed to Plaintiff's Statements as Exhibit "F", reflected that the funds deposited into the accounts of the NEDM Defendants were used to pay the rental and tax obligations for entities other than the Debtor.

9. With respect to paragraphs "18" and "19" of Plaintiff's Statements, the NEDM Defendants do not dispute that Mr. Nigri gave the quoted testimony. As to the former, the NEDM Defendants add they feared to use the Debtor's accounts and acknowledge having attempted to avoid the New York City Environmental Control Board for "a few months".

10. Defendants' Statement only submits two additional facts, which do not create questions of fact requiring the denial of the Motions.

## **ARGUMENT**

*A. The NEDM Defendants Were Not Mere Conduits of the Transfers*

11. Contrary to their assertions, the NEDM Defendants were not mere conduits of the transfers they received from the Debtor.

12. The Bankruptcy Code does not define "initial transferee". The seminal Second Circuit case on this issue arose out of *Finley Kumble*. In *Finley Kumble*, the Second Circuit analyzed the reasoning of *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 893 (7th Cir.1988) and adopted the "mere conduit" test for determining whether a party qualifies as a transferee under Section 550(a)(1). *Finley Kumble,* 130 F.2d at 58.

13. In *Bonded,* the court established the so-called "dominion and control" test for determining whether a party is a transferee under Section 550, wherein the court stated:

> we think the minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes, When A gives a check to B as agent for C, then C is the "initial transferee"; the agent can be disregarded.

*Id.*

14. The *Finley Kumble* decision "frames *Bonded's* 'dominion and control' test in the negative. Rather than stating that a party is an initial transferee if it exercises 'dominion and control' over the funds, the Second Circuit states that a party is *not* an initial transferee if it was a mere conduit of the funds." *See Bear Sterns v. Gredd (In re Manhattan Investment Fund)*, 397 B.R. 1, 14-15 (S.D.N.Y. 2007) (citations omitted) (footnote omitted) (emphasis in original).

15. "[T]he 'domination and control' test as stated in *Bonded* is now also an essential part of the 'initial transferee' inquiry in this Circuit through the *Finley Kumble* court's reliance on *Bonded*. Thus . . . an initial transferee must exercise dominion over the funds at issue and be able to put them to 'his own purposes' even if it is not a 'mere conduit' in the standard sense of the term." *Id*. at 15.

16. As evidenced by the proof of transfers annexed to Plaintiff's Statements as Exhibit "B" and the banks statements for the NEDM Defendants annexed as part of Plaintiff's Statements as Exhibit "F", Plaintiff's funds were deposited into the accounts of the NEDM Defendants, commingled in those accounts, and then disbursed for a variety of purposes, primarily to pay the tax and rental obligations of entities controlled by Mr. Nigri other than the Debtor.

17. As the NEDM Defendants exercised dominion and control over the Debtor's funds and put them to their own purposes, they are the initial transferee of the transfers at issue, rather than merely conduits.

B. *The NEDM Defendants Have Not Demonstrated Fair Consideration for the Transfers*

18. The NEDM Defendants contend that the Debtor made the transfers for fair consideration. This conclusion is unsupported by the record.

19. "Fair consideration" is defined by DCL § 272 to be given:

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272. "While dollar-for-dollar equivalence is not required, the value of the consideration may not be 'disproportionately small' as compared to the value of the transferred property." *Schneider v. Barnard*, 508 B.R. at 549 (quotation and citation omitted).

20. When "a transferee has given equivalent value in exchange for a debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995). A trustee did not need to show participation in a fraud to demonstrate lack of good faith; a showing of constructive knowledge was sufficient. *Picard v Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 2010 Bankr. LEXIS 3875 (Bankr. S.D.N.Y. 2010), *app. denied*, 2011 U.S. Dist. LEXIS 97647 (S.D.N.Y. Aug. 31, 2011).

21. Here, the NEDM Defendants have failed to refute Plaintiff's proof that the Debtor did not receive fair value and that the transfers were undertaken in bad faith. As to the former, the ledgers produced by the NEDM Defendants reflect that the Debtor's funds were commingled with funds from other sources and expended for the benefit of parties other than the Debtor. *See* Exhibit "F" to Plaintiff's Statements.

22. Even if the NEDM Defendants could demonstrate that all of the funds they received from the Debtor were used to pay obligations owed expressly by the Debtor such that the element of fair value could be satisfied, fair consideration would not exist in the absence of good faith.

23. Significantly, Defendants' Memorandum fails to address *Wimbledon Fin. Master Fund, Ltd. v Wimbledon Fund, SPC*, 2016 NY Slip Op 32556(U) (Sup. Ct., New York County December 22, 2016), cited in the Motion. In *Wimbledon*, the Court observed that

> even if there is fair consideration, a transfer is still constructively fraudulent in the absence of good faith on the part "of **both** the transferor and the transferee." *Id.* at 303 (emphasis added), quoting Berner Trucking, Inc. v Brown, 281AD2d924, 925 (1st Dept 2001); see Sardis v Frankel, 113 AD3d 135, 142 (1st Dept 2014) ("'Fair consideration' ... is not only a matter of whether the amount given for the transferred property was a 'fair equivalent' or 'not disproportionately small,' which the parties vigorously dispute, but whether the transaction is made 'in good faith,' an obligation that is imposed on both the transferor and the transferee."). Importantly, as pertinent here, "[a]n insider payment is not in good faith, regardless of whether or not it was paid on account of an antecedent debt." *Am. Media, Inc. v Bainbridge & Knight Labs., LLC,* 135 AD3d 477, 478 (1st Dept 2016), citing *EAC of N.Y, Inc. v Capri 400, Inc.,* 49 AD3d 1006, I 007 (3d Dept 2008).

24. As admitted at his deposition, Mr. Nigri undertook the transfers to hinder, delay and defraud the New York City Environmental Control Board because it had "a judgment against Pretty Girl and all the other stores, so, in order to protect ourselves from using the bank account in Chase, for Pretty Girl and the affiliate, they all had judgments, so, we opened this company [NEDM Payables Corp.] to take money and use it for banking. Otherwise, we had a judgment and they would have put the lien on the money in Chase." *See* Exhibit "G" to Plaintiff's Statements, p. 12.

25. Mr. Nigri further testified that "we were afraid to put money in our bank account in Chase because they had a judgment on most of the account. So, we used that account. . . to put all the money in there." *See* Exhibit "G" to Plaintiff's Statements, p. 14. Mr. Nigri admitted that Defendant was established for the same reason as NEDM Payable Corp. *See* Exhibit "G" to Plaintiff's Statements, p. 16.

26. As the transfers at issue constituted insider payments between Nigri controlled entities made by him for the express purpose of hindering, delaying and defrauding a creditor of the Debtor, they were not undertaken in good faith – without regard as to whether it was for a day, a few months or for a longer term.

27. As a last resort, the NEDM Defendants allege that the Debtor suffered no damages because its creditors were allegedly paid with its funds. This assertion is premised solely on the conclusory testimony of Mr. Nigri, without any evidentiary support. Moreover, that assertion is belied by the ledgers of the NEDM Defendants, which reflect that the Debtor's funds, once commingled in the accounts of the NEDM Defendants, were used to made payments for a number of entities controlled by Mr. Nigri other than the Debtor.

28. Finally, the NEDM Defendants posit that they should be absolved of liability because the fraud perpetrated by them, Mr. Nigri and the Debtor on the New York City Environmental Control Board "enabled the Debtor to continue operating its business thereby possibly even benefitting the Estate." This speculative "ends justify the means" argument is unsupported by any evidence in the record and must be rejected.

29. For the foregoing reasons, Plaintiff is entitled to judgment on his second claim for relief against the NEDM Defendants.

C. *The NEDM Defendants Have Failed to Present a Bona Fide Defense to Plaintiff's Third Claim for Relief*

30. As observed above, the NEDM Defendants have failed to satisfy either of the requisite elements of fair consideration by demonstrating fair value and good faith by admissible evidence. Instead, they continue to assert that the Debtor's funds were used to pay the Debtor's obligations to third parties without documentary evidence that this took place or any means of distinguishing the Debtor's funds from other funds deposited into their accounts. Moreover, even if

the NEDM Defendants could prove that the Debtor receive an indirect benefit from its own funds – which is unsupported in this record – doing so to avoid a judgment creditor was not undertaken in good faith.

31. As the NEDM Defendants had not contested any of the other elements of Plaintiff's third claim for relief and their arguments in opposition to the third claim merely repeat those raised in opposition to the second claim for relief, they should be overruled and judgment entered in favor of Plaintiff and against the NEDM Defendants on the third claim for relief.

   D. *The NEDM Defendants Have Failed to Demonstrate a Meritorious Defense to Plaintiff's Sixth Claim for Relief*

32. With respect to Plaintiff's sixth claim for relief, the NEDM Defendants offer nothing more than their assertions that they were merely conduits of the transfers and that the Debtor received something of value in return.

33. While it is well settled that evidence of fraudulent intent is commonly demonstrated through circumstantial evidence known as "badges of fraud", this is the rare case in which the orchestrator of the fraud, Mr. Nigri, as expressly acknowledged that the NEDM Defendants were established and used for the purposes of hindering, delaying and defrauding a judgment creditor.

34. Even if this were not the case, the record on the Motions demonstrates most, if not all, of the classic badges of fraud articulated in *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 809 (Bankr.S.D.N.Y. 2005):

> (1) lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;
> (6) the general chronology of the events and transactions under inquiry;

(7) a questionable transfer not in the usual course of business; and
(8) the secrecy, haste, or unusualness of the transaction.

35. Accordingly, Plaintiff is entitled to judgment on his sixth claim for relief.

*E. The NEDM Defendants Have Failed to Demonstrative Any Affirmative Defense Requiring Denial of the Motion*

36. In each of their answers, the NEDM Defendants asserted five affirmative defenses, namely: (a) a failure to state a claim; (b) the transfers were made in exchange for fair consideration; (c) the Debtor's interest in the transfers is not property of the estate; (d) the transfers were made in exchange for fair or reasonably equivalent value and in good faith; and (e) Plaintiff's claims are barred by the doctrines of unclean hands and/or *in pari delicto*. *See* Exhibit "C" to Plaintiff's Statements.

37. Defendants' Memorandum advances three affirmative defenses, specifically the mere conduit defense, the doctrine of unclean hands, and unjust enrichment. The first and third of these were not raised and preserved in the answers interposed by the NEDM Defendants, such that they are waived. *See* Exhibit "C" to Plaintiff's Statements.

38. Even these defenses have not otherwise been waived, Plaintiff has already addressed above why the NEDM Defendants are not mere conduits.

39. With respect to the unjust enrichment defense, if somehow preserved, such defense is not ripe since Plaintiff has not yet had a recovery on his claims against the NEDM Defendants.

40. To prove unjust enrichment, one must show (1) that a party benefitted; (2) at a complainant's expense; and (3) that equity and good conscience require restitution. *Mandarin Trading Ltd. v. Wildenstein,* 16 N.Y.3d 173, 182 (2011) (citations, alterations, and internal quotation marks omitted).

41. The essential inquiry "is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State of New York,* 30 N.Y.2d 415, 421 (1972).

42. In *In re Chin*, the United States Bankruptcy Court for the Eastern District of New York both reiterated and explained:

> [T]o prove an unjust enrichment claim more is required than simply showing that one party received a benefit …, that the enrichment must be such that in equity and good conscience its retention would be unjust, and to determine whether there has indeed been unjust enrichment the inquiry must focus on the "human setting involved," not merely upon the transaction in isolation.

*In re Chin*, 492 B.R. 117, 125 (E.D.N.Y. 2013) (citations omitted); *see Songbird Jet Ltd. v. Amax Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984).

43. Plaintiff has not received a benefit or been enriched as of yet since it has not been awarded and collected on judgments against the NEDM Defendants.

44. The NEDM Defendants' central concern is that Plaintiff may have a double recovery if he is awarded and collects on his judgments. This assertion is premised on the faulty assumption, belied by the ledgers produced by the NEDM Defendants, that the Debtor's funds fraudulently conveyed to the NEDM Defendants were earmarked and expended solely for the Debtor's benefit. Accordingly, the unjust enrichment defense must fail.

45. In order to prevail on their unclean hands affirmative defense, the NEDM Defendants must prove that (1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party and (3) the asserting party was injured as a result. *Kopsidas v. Krokos*, 294 A.D.2d 406, 742 N.Y.S.2d 342, 344 (2002); see also *In re Cohen*, 418 B.R. at 807-08.

46. The party asserting the doctrine has the initial burden of demonstrating these elements. *Fade v. Pugliani/Fade*, 8 A.D.3d 612, 779 N.Y.S.2d 568, 570 (2004). The doctrine of

unclean hands is "never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only `when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct.'" *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 267 N.Y.S.2d 193, 214 N.E.2d 361, 362 (1966) (internal citations omitted); see also *Markel v. Scovill Mfg. Co.*, 471 F.Supp. 1244, 1255 (W.D.N.Y. 1979) ("[C]ourts are reluctant to apply the unclean hands doctrine in all but the most egregious situations.").

47. Defendants' Memorandum fails to address any of these elements and, instead, states in conclusory fashion that the defense applies here. Give the position taken by the NEDM Defendants with respect to the issue of good faith, it is no surprise that the unclean hands defense is not meaningfully argued.

48. The NEDM Defendants cannot use their position that the transfers were undertaken "for the sole purpose of paying the Debtor's creditors in order to keep the business operating" as both a sword and a shield. Moreover, the NEDM Defendants had not identified any present injury as a consequence of the transfers.

49. For the foregoing reasons, each of the NEDM Defendants affirmative defenses should be rejected.

## CONCLUSION

50. For the foregoing reasons, the Motions should be granted over the objections of the NEDM Defendants.

Dated: November 3, 2020
       Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Plaintiff Salvatore LaMonica, as*
*Chapter 7 Trustee of the Estate of Pretty Girl, Inc.*

By: **_s/David A. Blansky_**
David A. Blansky, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500

*m:\documents\company\cases\pretty girl\fraudulent conveyance actions against third parties\declaration in reply - nedm re & nedm payables.doc*