**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
|     PRETTY GIRL, INC., | Case No. 14-11979 (SHL) |
|                       Debtor. | (Jointly Administered) |

-----------------------------------------------------------x

SALVATORE LAMONICA, AS CHAPTER 7
TRUSTEE OF PRETTY GIRL, INC.

              Plaintiff,

vs.

NEDM PAYABLES CORP.,                                              Adv. Pro. No. 16-01145 (SHL)

              Defendant.

-----------------------------------------------------------x

SALVATORE LAMONICA, AS CHAPTER 7
TRUSTEE OF PRETTY GIRL, INC.

              Plaintiff,

vs.

NEDM R.E. CORP.,                                                      Adv. Pro. No. 16-01146 (SHL)

              Defendant.

-----------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**LAMONICA HERBST & MANISCALCO, LLP**
*Counsel for Plaintiff, Salvatore LaMonica, the Chapter 7 Trustee of Pretty Girl, Inc.*
3305 Jerusalem Avenue
Wantagh, NY 11793
Phone: 516.826.6500
By:    David A. Blansky, Esq., Joseph S. Maniscalco, Esq.

**ROSEN & ASSOCIATES, P.C.**
*Counsel for Defendants*
747 Third Avenue

New York, NY 10017-2803
Phone: 212.223.1100
By:   Sanford P. Rosen, Esq.,
      Christine M. Dehney, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two motions for partial summary judgment against the defendants in the two above-captioned adversary proceedings filed by Salvatore LaMonica, of Pretty Girl, Inc., who is the Chapter 7 Trustee of Pretty Girl, Inc., the debtor in the above-captioned bankruptcy proceeding. For the reasons set forth below, the motions are granted.

## BACKGROUND

The Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the main bankruptcy case in July 2014. [Case No. 14-11979, ECF No. 1]. Prior to the bankruptcy filing, the Debtor managed 27 retail stores selling price-conscious women's clothing. *See* Declaration of Albert Nigri Pursuant to Rule 1007-2 ¶ 5 [Case No. 14-11979, ECF No. 1] ("Nigri Decl."). The Debtor's case was converted from Chapter 11 to Chapter 7 in late December 2014. [Case No. 14-11979, ECF No. 142]. Salvatore LaMonica was then appointed as Chapter 7 Trustee. [Case No. 14-11979, ECF No. 143].

In late June 2016, the Trustee initiated these adversary proceedings with two nearly identical complaints against NEDM Payables Corp. (the "Payables Defendant") and NEDM R.E. Corp. (the "RE Corp Defendant.") [Adv. Pro. No. 16-01145 and Adv. Pro. No. 16-01146, respectively]. In these actions, the Trustee seeks to recover funds allegedly transferred to the Defendants. *See generally,* Complaint against Payables Defendant [Adv. Pro. No. 16-01145,

2

ECF No. 1]; [1] Complaint against RE Corp Defendant [Adv. Pro. No. 16-01146, ECF No. 1]. The Trustee now moves for summary judgment to recovery on theories of actual and constructive fraudulent conveyance. [Adv. Pro. No. 16-01145, ECF No. 28; Adv. Pro. No. 16-01146, ECF No. 28]. [2]

The Payables Defendant was the recipient of $289,030.08 via six separate wire transfers in September and October 2011 and one check from the Debtor in April 2014.  Trustee's SMF re Payables ¶ 6; Exh. B. The RE Corp Defendant was the recipient of $185,573.02 via three wire transfers from the Debtor in October and November 2011.  Trustee's SMF re RE Corp ¶ 6; Exh. B.  The business purpose of the RE Corp Defendant was to manage the real estate related matters of Debtor.  Defendants' SMF, Additional Facts ¶ 2; *see also* Trustee's SMF re RE Corp, Exh. G. The business purpose of the Payables Defendant was to conduct banking for the Debtor and affiliated companies.  Defendants' SMF, Additional Facts ¶ 1; *see also* Trustee's SMF re Payables, Exh. G.

Albert Nigri was the principal of the Debtor.  *See* Declaration of Albert Nigri Pursuant to Rule 1007-2 ¶ 5 [Case No. 14-11979, ECF No. 1] (the "Nigri Decl.").  Mr. Nigri created both of the Defendants.  *See* Exh. G to Trustee's Statements, at 10:2-9; 15:14-16:9. As Mr. Nigri admitted, the New York City Environmental Control Board had "a judgment against [Debtor] and all the other stores, so, in order to protect ourselves from using the bank account in Chase,

---

[1] The Payables Defendant complaint includes two additional claims for relief that are not included in the RE Corp Defendant complaint, neither of which are included for consideration in the Trustee's Motions.

[2] In support of the motions, the Trustee submitted statements of material facts.  *See* Plaintiff's Statement of Material Facts Pursuant to Rule 7056 of the Local Bankruptcy Rules for the Southern District of New York [Adv. Pro. No. 16-01145, ECF No. 26] ("Trustee's SMF re Payables"); [Adv. Pro No. 16-01146, ECF No. 26] ("Trustee's SMF re RE Corp") (together the "Trustee's Statements"). The Defendants submitted one statement of material facts in opposition to the two motions. Defendants' Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 Additional Facts ¶ 1 [Adv. Pro. No. 16-01145, ECF No. 32; Adv. Pro. No. 16-01146, ECF No. 33] ("Defendants' SMF").

3

for Pretty Girl and the affiliate, they all had judgments, so, we opened [Payables Defendant] to take the money and use it to--for banking." Trustee's SMF re Payables ¶ 17; *see also* Exh. G to Trustee's Statements, at 14. Mr. Nigri testified that the RE Corp Defendant was established for the same purpose as the Payable Defendant. Trustee's SMF re: RE Corp ¶ 19; *see also* Exh. G to Trustee's Statements, at 16. As Mr. Nigri explained, "we were afraid to put money in our bank account in Chase because they had judgment [sic] on most of the account. So, we used that account… to put all the money in there." Trustee's SMF re Payables ¶ 17; *see also* Exh. G to Trustee's Statements, at 14. Defendants argue that while Nigri's action may have delayed the judgment enforcement, Defendants note that the judgment against the New York City Environmental Control Board was eventually satisfied. Defendants' SMF ¶ 19.

In addition to the judgment of the Environmental Control Board, the Debtor was conducting business in the shadow of another judgment. Prior to the bankruptcy proceeding, Osama Hazza Saleh filed a complaint against Debtor and three co-defendants in the United States District Court for the Eastern District of New York, Case No. 09-cv-1769 (RER). Trustee's SMF re Payables ¶ 20. In June 2014, a judgment was entered awarding Mr. Saleh $3.365 million (the "Saleh Award"). *Id.* ¶ 21, Exh. H to Trustee's Statements. The Saleh Award was unsatisfied as of the petition date in the main bankruptcy proceeding. *Id.* ¶ 22. Indeed, the Saleh Award was included on the schedule of the 20 largest unsecured claims annexed as Exh. A to the Nigri Decl.. *Id.* ¶ 23, Exh. I to Trustee's Statements.[3]

The Trustee maintains—and the Defendants have provided no evidence to dispute—that none of the transfers at issue here were on account of antecedent debt owed by the Debtor to the Defendants, the Debtor was not a guarantor of any debt owed by a third party to either Defendant

---

[3] The Defendants provide no response to the allegations concerning the Saleh Award. *See* Defendants' SMF ¶¶ 20-23. Given the lack of response, the Court considers these facts undisputed.

4

on the date of any transfer, neither Defendant was a creditor of the Debtor at the time of any transfer, and neither Defendant directly repaid the amount of any transfer. Trustee's SMF re Payables ¶ 16; Trustee's SMF re RE Corp ¶ 16; *see also* Exh. E to Trustee's Statements (Defendant's Response to Plaintiff's Request for Admission Nos. 10 – 15); Defendants' SMF ¶¶ 7, 14–15 (confirming that the transfers occurred and that the cited bank records are accurate). Rather, Defendants say that these were payments on the Debtor's account to its landlord and other creditors and, therefore, were indirect payments to the Debtor. Defendants' SMF ¶ 16.

In late August 2020, the Trustee filed the motion for summary judgment against the Payables Defendant and the Motion for Summary Judgment against the RE Corp Defendant on its second, third, and sixth claims for relief. [Adv. Pro. No. 16-01145, ECF No. 28] ("Payables SJ Motion"); [Adv. Pro. No. 16-01146, ECF No. 28] ("RE Corp SJ Motion"). As the two cases raise similar issues, the Chapter 7 Trustee filed nearly identical memorandums of law [Adv. Pro. No. 16-01145, ECF No. 27; Adv. Pro. No. 16-01146, ECF No. 27] and Trustee's Statements. Defendants filed a single memorandum of law in opposition to both of Plaintiff's motions, [Adv. Pro. No. 16-01145, ECF No. 31; Adv. Pro. No. 16-01146, ECF No. 31] and the Trustee filed a single reply [Adv. Pro. No. 16-01145, ECF No. 33; Adv. Pro. No. 16-01146, ECF No. 34] ( the "Trustee's Reply").

## DISCUSSION

**A. Legal Standards**

   1. Summary Judgment

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

5

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.[4] "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [movant] is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [the movant's] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). At this point, the burden then shifts to the non-moving party to produce "sufficient specific facts to establish that there is a genuine issue of material fact for trial." *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir. 1995) (citation omitted).

"A fact is material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). "In deciding whether material factual issues exist, all ambiguities must be resolved and all reasonable inferences must be drawn in favor of the nonmoving party." *In re Ampal-Am. Israel Corp.*, 2015 Bankr. LEXIS 2934, *31 (Bankr. S.D.N.Y. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A party opposing a properly supported motion for summary judgment may not rest upon allegations or denials of pleadings but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]here is no issue

---

[4] Federal Rule of Bankruptcy Procedure 7056 makes applicable to this proceeding Federal Rule of Civil Procedure 56.

6

for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Properly supported facts in a statement of material facts that are not specifically controverted by an opposing party are deemed admitted. *See* S.D.N.Y. Local Bankruptcy Rule 7056-1(d) ("Each numbered paragraph in the statement of material facts required to be served by the moving party shall be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

　　2. Fraudulent Transfer Law

Before a trustee can recover under Sections 544 and 550 of the Code, a conveyance must be avoidable under the relevant state fraudulent transfer law. 11 U.S.C. §§ 544, 550. The New York Debtor and Creditor Law (NY DCL) statute—specifically DCL Sections 273 and 276 that are invoked by the Trustee here—define different types of conveyances by a debtor that become recoverable by creditors because of their fraudulent nature. These conveyances fall into two categories: constructively fraudulence conveyances, such as DCL Section 273, and actually fraudulent conveyances, as defined by DCL Section 276.[5]

DCL Section 273 provides that: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair

---

[5] The Court notes that in December 2019, Article 10 ("Fraudulent Conveyances") of the N.Y. DCL was repealed and was replaced by the Uniform Voidable Transactions Act. However, the Uniform Voidable Transactions Act only applies to transactions which occurred on or after April 4, 2020. The parties all agree on the applicable legal standard here.

7

consideration." N.Y. Debt. & Cred. Law § 273. "The Second Circuit has instructed that a conveyance is "deemed constructively fraudulent" under DCL Section 273 only if 'two separate elements are satisfied: first, it is made without fair consideration, and second, the transferor is insolvent or will be rendered insolvent by the transfer in question.'" *Kim v. Yoo*, 311 F.Supp.3d 598, 610-11 (S.D.N.Y. 2018), *aff'd*, 776 Fed. Appx. 16 (2d Cir. 2019) (quoting *United States v. Watts*, 786 F.3d 152, 164 (2d Cir. 2015). "Constructive fraudulent conveyance under DCL Section 273 is "defined exclusively by the objective conditions of the asset transfer at issue, without regard to the debtor's intent in making the transfer.'" *Kim*, 311 F.Supp.3d at 611 (quoting *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.,* 126 F.Supp.3d 388, 400 (S.D.N.Y. 2015), *aff'd*, 716 Fed.Appx. 23 (2d Cir. 2017). The burden of proof for constructive fraud claims is preponderance of the evidence. See, e.g., *In re Chin*, 492 B.R. 117 (Bankr. E.D.N.Y. 2013). "[T]he element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee." *Kim*, 311 F.Supp.3d at 611 (quoting *Watts*, 786 F.3d at 165 (citations omitted)); *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 U.S. Dist. LEXIS 12576, at *150 (S.D.N.Y. Aug. 30, 2000) ("The effect of this presumption is to impose the burden of coming forward with proof of solvency on those defending the transfers.").

For purposes of DCL Section 273, "fair consideration" is defined by DCL Section 272, which provides:

> Fair consideration is given for property, or obligation: (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

8

N.Y. Debt. & Cred. Law § 272.  Thus, "fair consideration has two components—the exchange of fair value and good faith—and both are required." *Kim*, 311 F.Supp.3d at 611 (quoting *In re Khan*, No. 10 Civ. 46901 (ESS), 2014 WL 10474969, at *8 (E.D.N.Y. Dec. 24, 2014).  Fair consideration is determined by the facts and circumstances of each particular case.  *In re Corcoran*, 246 B.R. 152, 159 (E.D.N.Y. 2000) "Good faith is required of both the transferor and the transferee, and it is lacking when there is a failure to deal honestly, fairly, and openly." *Berner Trucking, Inc. v. Brown*, 722 N.Y.S.2d 656, 658 (App. Div. 4th Dep't 2001).

As for actual fraud, DCL Section 276 provides that: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276. To avoid a transfer as actually fraudulent under this section, the trustee must establish that: (1) the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud. *McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.)*, 559 B.R. 41, 61 (Bankr. E.D.N.Y. 1996).  Under DCL Section 276, a transferor does not need to receive fair consideration for a conveyance to be fraudulent.  See *Kim*, 311 F.Supp.3d at 612 (citing *MFS/Sun Life Tr.–High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F.Supp. 913, 934 (S.D.N.Y. 1995).  But a creditor must show "intent to defraud on the part of the transferor" to prevail under DCL Section 276.  *Id.* citing *In re Sharp Int'l Corp.,* 403 F.3d 43, 56 (2d Cir. 2005). The burden of proving actual intent is on the party who seeks to set the conveyance aside, and such intent must be demonstrated by clear and convincing evidence.  *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 934 (S.D.N.Y. 1995).

9

As proving actual intent under DCL Section 276 is difficult to establish through direct evidence, the relevant intent may be inferred from the facts and circumstances surrounding the transfer." *S.E.C. v. Smith*, 646 Fed.Appx. 42, 45 (2d Cir. 2016) (summary order) (citing *In re Cassandra Grp.*, 312 B.R. 491, 497 (Bankr. S.D.N.Y. 2004)). "These so-called 'badges of fraud' are facts and circumstances 'so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'" *Kim*, 311 F.Supp.3d at 612 (quoting *In re Sharp*, 403 F.3d at 56) (internal citations omitted). The badges of fraud include:

(1) the lack or inadequacy of consideration;

(2) the family, friendship, or close associate relationship between the parties;

(3) the retention of possession, benefit, or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

*Doubleline Capital LP v. Odebrecht Fin.*, Ltd., 323 F. Supp. 3d 393, 467 (S.D.N.Y. 2018); *see also In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). Other facts that give rise to an inference of fraud include whether "it was a 'secret and hasty transfer not in the usual course of business,' the degree of 'the transferor's knowledge of the creditor's claim and the transferor's inability to pay it,' and 'the use of dummies or fictitious parties' in the transfer. *Kim*, 311 F.Supp.3d at 612-13 (citing *MFS/Sun Life Tr.*, 910 F.Supp. at 935).

10

**B. The Transfers Were Constructively Fraudulent**

Plaintiff has identified transfers totaling $289,030.08 from the Debtor to the Payables Defendant. Trustee's SMF re Payables ¶ 6. Plaintiff also identified three wires totaling $185,573.02 to the RE Corp Defendant. Trustee's SMF re RE Corp ¶ 6. The Defendants do not contest that these transfers occurred in those amounts. Defendants' SMF ¶ 6. Applying the standards discussed above, the Court finds that the undisputed facts establish that these transfers are avoidable under DCL Section 273.

1. Fair Consideration

The Trustee argues that no consideration was given for the transfers, no transfer was made on account of antecedent debt, Debtor was not a guaranty of any third-party banking entity debt, the Defendants were not creditors of Debtor, and neither entity directly repaid Debtor for the transfers. Trustee's SMF re Payables ¶ 6; Trustee's SMF re RE Corp ¶ 6.

The Defendants admit these assertions but claim generally that "Defendants made payments on the Debtor's account, to its landlord and other creditors, thereby indirectly repaying the Debtor through payment of the Debtor's liability." Defendants' SMF ¶ 16, Trustee's Statements, Exh. E. But Mr. Nigri's general statement does not establish what value, if any, was provided to Debtor. And the documentary evidence submitted by Defendants fares no better. It demonstrates only that Defendants commingled theses transfers with various funds from other sources and then used them for a variety of purposes. *See* Hr'g Tr., November 19, 2020, 17:7-16.[6] Indeed, the Defendants concede that several entities were sending money to the Defendants and that payments from the Defendants were then made on behalf of Pretty Girl and other entities. *Id.* at 19:19 – 30:21; 31:17 – 32:2. As Mr. Nigri states that the money was used to pay

---

[6] Defendants' documentary evidence suffers from another defect: it was never produced in discovery. *See* Hr'g Tr. November 19, 2020 17:7-22.

11

various bills of his various entities, he concedes that they "don't…know who ultimately benefit[ed] from that [and don't know] what specific bills were part of what specific entity." *Id.* at 34:1-9.  Given this record, the Court finds Trustee has met it burden to show a lack of fair consideration and the Defendants have failed to present evidence that contradicts the Trustee's showing.

2. Lack of Good Faith

The undisputed evidence establishes that both Defendants were established with the explicit purpose of redirecting funds to hinder and delay the enforcement of a judgment against Debtor.  Trustees' SMF re RE Corp ¶¶ 17-20, Exh. G.  This was done by Mr. Nigri, who is the sole officer, director and shareholder of the Debtor and also the 100% shareholder of the Defendants.[7]  Nigri Decl. ¶¶ 1, 5.  Defendants admit that "[o]nly through Mr. Nigri's actions was the Debtor able to continue to pay its vendors and maintain its business." Defendants' SMF ¶ 19.  And as Mr. Nigri also controlled the Defendants, the Defendants obviously knew that the money was being sent to them to avoid it being taken by Debtor's creditors.

While the Defendants proffer that the judgment to the New York City Environmental Control Board was ultimately paid, *see* Defendants' SMF ¶ 19, Defendants do not actually offer any proof of payment.  Trustee's SMF re Payables ¶ 19.  Nor do Defendants cite any case authority for the proposition that the eventual payment of a judgment somehow absolves a party of their earlier transfer of funds to avoid the payment of that judgment. *Berner Trucking,* 722 N.Y.S.2d at 658 (When parties fail to deal honestly, fairly and openly – for example when a shareholder and manager of both transfer parties directs checks from one entity to the other, even in satisfaction of antecedent debt—courts have found a lack of good faith); *see. Am. Media, Inc.*

---

[7]   Mr. Nigri refers to 27 "stores" in his Declaration, stating that he is the 100% shareholder of each Store. Nigri Decl. ¶ 5.

12

*v. Bainbridge & Knight Labs., LLC*, 22 N.Y.S.3d 437, 439 (App. Div. 1st Dep't 2016) (Insider payments are, regardless of antecedent debt, not found to be made in good faith under New York law); *see also Matter of EAC of N.Y., Inc. v. Capri 400, Inc.*, 853 N.Y.S.2d 419 (App. Div. 3d Dep't 2008); *American Panel Tec v. Hyrise, Inc.*, 819 N.Y.S.2d 768 (App. Div. 2d Dep't 2006) (the transfer of assets to corporate officer to satisfy antecedent debt lacks good faith). Given this record, the Trustee has established a lack of good faith.

3. <u>Insolvency</u>

Having established a lack of fair consideration for the transfers, a presumption of insolvency arises in favor of the Trustee. *See In re Corcoran*, 246 B.R. at 163. The Defendants have not provided evidence to counter the presumption of the debtor's insolvency and, in fact, never actually addressing this issue in its papers or at oral argument. For all these reasons, therefore the Court holds the Trustee has met its burden in establishing insolvency.[8]

**C.  The Transfers Were Actually Fraudulent Under Section 276**

The record also establishes that these transfers can be avoided as actually fraudulent under DCL Section 276. In considering the three elements required for an actually fraudulent transfer, first, the funds transferred have value which a creditor could realize. *See* Trustee's SMF re Payables ¶ 6; Trustee's SMF re RE Corp ¶ 6. Second, it is clear that the Debtor is the party who made these transfers. *See Id*. Third, the evidence here establishes that the transfers were done with an intent to defraud; this intent is clear given Mr. Nigri's admission that these entities were created with the specific purpose of keeping the money out of the hands of Debtor's creditors. *See* Trustees' SMF re Corp ¶¶ 17-20, Exh. G.

---

[8]    At the time of these transfers, moreover, there was an outstanding judgment to the New York City Environmental Control Board. Trustee's SMF re Payables ¶ 17, Exh. G. This also supports an inference of insolvency as the transfers were made while the debtor was indebted. See Feist v. Druckerman, 70 F.2d 333, 334 (2d Cir. 1934).

13

**D. The Mere Conduit Defense**

The Defendants do not dispute these elements other than to argue that they were acting only as a "mere conduit," rather than the party that received the benefit of the transfers. Once a transfer is avoided, in fact, Section 550 only permits recovery from certain transferees. 11 U.S.C. § 550 ("[T]he trustee may recover . . . from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee."). The question then is whether Defendants are an "initial transferee" from which the Trustee may recover under Section 550, or were merely pass through entities. The Bankruptcy Code does not define "initial transferee," but courts agree that 550 does not "compel, or persuasively argue for, the principle that every conduit is an initial transferee." *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 56 (2d Cir. 1997)

Some useful guidance exists on this issue. The Seventh Circuit in *Bonded Financial* determined that an initial transferee must have "dominion and control" over a conveyance for it to be recoverable under Section 550. *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988). It reasoned that a recipient with dominion and control over transferred funds is "free to invest the whole [amount] in lottery tickets or uranium stocks" if it wishes. *Id.* at 894. While banks do have dominion or control when receiving money directed to pay off a debt owed to the bank, a bank does not have dominion or control when money is submitted and directed into a customer account. *Id.*; *In re Finley Kumble* 130 F.3d at 58 (excusing insurance brokers as "mere conduits" outside of the scope of Section 550's "initial transferees"); *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1200 (11th Cir. 1988) (a bank following direction is

14

depositing money into a customer account was not an initial transferee under 550).  The party asserting the "mere conduit defense" has the burden of proof of establishing its status as a mere conduit, rather than a transferee. *In re Enron Corp.*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) *citing In re Greater Se. Cmty. Hosp. Corp. I*, 341 B.R. 91, 99 (Bankr. D.D.C. 2006), *order amended on reconsideration sub nom. In re Greater Se. Cmty. Hosp. Corp.*, No. 02-02250, 2006 WL 2083500 (Bankr. D.D.C. June 26, 2006).

      The "mere conduit" defense has been used not only by insurance companies, but also by banks, attorneys and other firms routinely processing transfers.  *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993) (a law firm holding a client's loan in a trust account is a mere fiduciary not an initial transferee under 550). *Compare Gropper v. Unitrac, S.A.* (*In re Fabric Buys of Jericho, Inc.*), 33 B.R. 334 (Bankr. S.D.N.Y. 1983) (a law firm accepting and holding in escrow a settlement check is not an initial transferee under 550) *with Authentic Fitness Corp. v. Dobbs Temporary Help Svcs., Inc. (In re The Warnaco Group, Inc.)*, 2006 U.S. Dist. LEXIS 4263 (S.D.N.Y. Feb. 2, 2006) (a staffing agency, though obliged to pay wages withholding taxes and insurance, could have also used the money to pay its overhead and thus was deemed included in Section 550).  These cases distinguish between any initial recipient, perhaps the first to touch any disputed funds, and the "initial transferee" in Section 550.  Indeed, the statute includes both "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550.  Because both "immediate and mediate" transferees are included, "we know that the 'entity for whose benefit' phrase does not simply reference the next pair of hands; it references entities that benefit as guarantors of the debtor, or otherwise, without ever holding the funds."  *In re Finley Kumble,* 130 F.3d at 56 (citing 11 U.S.C. § 550).

15

Defendants here invoke the "mere conduit" defense, arguing that the Defendant entities could not act on their own accord and were only able to act at the direction of the Debtor. Defendants' Opposition, at 4 (citing *McCord v. Ally Financial (In re USA United Fleet)*, 559 B.R. 41 (Bankr. E.D.N.Y. 2016)).  The Trustee counters by arguing that Defendants had dominion and control over the funds—and thus were not mere conduits—such that they were an "initial transferee" subject to recovery under 550.  Trustee's Reply ¶ 17.

Given the record in this case, the Court agrees with the Trustee.  It is undisputed that the transfers here were commingled with funds from Mr. Nigri's other entities and then used to pay various bills of Mr. Nigri's various entities. Trustee's SMF re Payables ¶ 6, Exh. F; Trustee's SMF re RE Corp ¶ 6, Exh. F.  Such commingling destroys the mere conduit defense because it demonstrates dominion and control over the funds. See Hr'g Tr., Nov. 19, 2020 22:17 – 23:14 (Trustee's counsel noting that "[o]nce you commingle the funds, you've exercised dominion and control over it because you believe you could put it into the pot and then you could stir the pot around and use it for a variety of purposes, which may or may not benefit the debtor."); *see also State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04CV2609 (NG) (SMG), 2017 WL 4217122, at *3 (E.D.N.Y. Sept. 21, 2017) (holder of funds was entitled to the mere conduit defense because the holder lacked dominion and control, demonstrated by the inability to commingle the funds with other monies.)

Indeed, the facts here are not consistent with the purpose of the "mere conduit" defense, which is designed to protect innocent transferees. For example, the court in *In re Columbia Data Products, Inc.*, 892 F.2d 26, 28 (4th Cir. 1989), distinguished between recipients who lacked a direct business relationship—and were thus a mere conduit—from recipients who maintain a direct relationship with the transferor, and thus were not a mere conduit.  So, while the "mere

16

conduit" test has excused couriers, *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996), attorneys, *Security First Nat'l Bank v. Brunson (In the Matter of Coutee)*, 984 F.2d 138 (5th Cir. 1993), and collection agents, *Salmon v. Nedlloyd, Inc. (In re Black & Geddes)*, 59 B.R. 873 (Bankr. S.D.N.Y. 1986), from the definition of "initial transferee", the transferees in such instances were all serving as arms-length third-parties performing a business function. As a matter of policy, the mere conduit defense exists to prevent liability for those parties merely handling funds but who lack the control to do with them what they wish. *In re Finley Kumble,* 130 F.3d at 56. It would be inappropriate to extend the defense here where Mr. Nigri owned and controlled not only the Debtor but all the entities involved in these transfers.

### E. The Unjust Enrichment Defense

Defendants invoke the defense of unjust enrichment. "Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *Golden Pacific Bancorp v. F.D.I.C.*, 375 F.3d 196, 203 n.8 (2d Cir. 2004). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *see also Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983). To support a defense of unjust enrichment, therefore, Defendants must demonstrate that Debtor received a benefit. But given the commingled state of the funds as explained above, Defendants have not established what benefit, if any, the Debtor or the Debtor's estate received from the transfers to the Defendants. *See* Defendants' Answer and Affirmative Defenses [Adv. Pro. No. 16-01145, ECF No. 13; Adv. Pro. No. 16-01146; ECF No. 13]. Additionally, unjust enrichment is an equitable remedy that

seems ill suited to these facts where Defendants' conduct was inequitable. *See* Hr'g Trn. November 19, 2020 25:7-15 (Trustee's counsel argues that Defendants "can't resort to an equitable remedy for conduct that entails…perpetrating a fraud on a creditor.").[9]

### F. The Unclean Hands Defense

Lastly, the Defendants assert the defense of unclean hands. The doctrine of unclean hands applies when the party seeking to invoke the doctrine can show that: (1) the other party is guilty of immoral, unconscionable conduct; (2) the conduct is directly related to the subject matter of the litigation; and (3) the conduct injured them. *Kopsidas v. Krokos*, 742 N.Y.S.2d 342, 344 (App. Div. 2d Dep't 2002). The party seeking to invoke the doctrine of unclean hands has the initial burden of making prima facie showing that the elements of the doctrine have been satisfied. *Fade v. Pugliani*, 779 N.Y.S.2d 568, 570 (App. Div. 2d Dep't 2004). Defendants fail to analyze how the specific elements of this defense are met and instead generally argue that the Trustee should not reap the benefit of avoidance based on the Debtor's wrongdoing.[10]

But once again, the unclean hands defense is an equitable remedy that is a poor fit given Defendants' inequitable conduct. Moreover, the Trustee seeks to recover the funds for the benefit of creditors of the estate, not for the benefit of Mr. Nigri who is not only the equity

---

[9] Moreover, the unjust enrichment defense was not raised in Defendant's answers. [Adv. Pro No. 16-01145, ECF No. 13; Adv. Pro No. 16-01146, ECF No. 13]. Generally speaking, an affirmative defense not raised by an answer is waived. *Corporate Food Mgt. v Suffolk Community Coll. (In re Corporate Food Mgt.)*, 223 B.R. 635, 648, n.20 (Bankr. E.D.N.Y. 1998).

[10] For purpose of the unclean hands defense, the Defendants argue that the transfers were made in bad faith by the Debtor, which is at odds with its position that the transfers were made in good faith for purposes of DCL Section 273. *See United States v. Nhan Le Tran*, 2018 U.S. Dist. LEXIS 142075, at *28 (N.D. Cal. Aug. 20, 2018) (citing 18B Charles Alan Wright et al., Federal Practice and Procedure § 4477 ("Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.")).

18

holder of the Debtor but also owner of the entities that ultimately received the benefit of the transfers.

## **CONCLUSION**

For the foregoing reasons, the Court grants Trustee's Motions for Summary Judgment. The proposed order must be submitted by the Chapter 7 Trustee filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the notice and proposed order also served upon counsel to Defendants.

Dated: White Plains, New York  
      October 7, 2022

*/s/ Sean H. Lane*  
UNITED STATES BANKRUPTCY JUDGE